## Rapp Lumber Co. v. Smith et al.

(Decided March 22, 1935.)

THOS. D. TINSLEY and J. J. TYE for appellant.

H. H. OWENS and V. A. JORDAN for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming in part and reversing in part.

This is the second appeal of this case, and by reference to the opinion on the former appeal which will be found in 243 Ky. 317, 48 S. W. (2d) 17, we are saved the necessity of further detailing the facts appearing therein, except in so far as may be necessary in disposing of the questions presented by this appeal.

Briefly stated the facts necessary to an under-

standing of the questions involved are, as we understand the record, that some time prior to 1926, Sam R. Sells purchased a large tract of land, or the timber thereon, from the Black heirs, and by some sort of contract or arrangement, the firm of Lewis & McKinney acquired the soft woods and Sells retained the oak and other hardwoods. Lewis & McKinney placed a mill or mills upon the lands and proceeded to cut and manufacture the timber into lumber. They entered into a contract with the firm of Hammons & Calebs to also cut and saw the timber into lumber, and under this arrangement Hammons & Calebs set a sawmill on the tract in March, 1927, and cut and sawed timber until some time in the following February. Prior, however, to the time they ceased operations, they filed a manufacturer's or laborer's lien in the county court clerk's office of Knox county against Lewis & McKinney; and certain laborers who had assisted in the cutting and hauling of logs and lumber asserted laborer's liens.

Hammons & Calebs and various laborers instituted separate actions against Lewis & McKinney seeking judgment for the amount alleged to be due them and asking for the enforcement of their liens. These actions were consolidated, and an attachment which issued was levied upon certain lumber at the mill yards of Hammons & Calebs and at the railroad station at Four Mile, and Noah Smith was appointed receiver to take charge and dispose of the lumber. He had loaded some of the lumber at Four Mile on cars preparatory to shipping and selling it, when the Rapp Lumber Company instituted this action, alleging that it was the owner of approximately 325,000 feet of the lumber stacked at Four Mile which it had purchased under contract with Lewis & McKinney and that this lumber had been marked in its name and that it had paid a large part of the purchase price therefor. As pointed out in the former opinion, a temporary injunction was granted and the Rapp Lumber Company proceeded to ship and dispose of considerable portions of the lumber, but some for which they could not find a market burned at the railroad yards and the Rapp Lumber Company collected a little over $4,000 insurance thereon.

Some months thereafter the receiver set up a claim to the lumber disposed of by the Rapp Lumber Company and to that which had been destroyed by fire and asserted that the liens of laborers were prior and supe-

rior to the Rapp Lumber Company's claim of ownership. The judgment rendered in favor of the lien creditors was reversed by the former opinion on the ground that the receiver sued as an individual could not counterclaim to litigate disputed lien claims between the creditors of the estate and the Rapp Lumber Company, and that judgment on the counterclaim in favor of creditors not before the court was void.

On a return of the case, S. H. Hammons, a member of the firm of Hammons & Calebs, for himself and all other persons holding claims against Lewis & McKinney, filed a petition to be made a party and which he made an answer, counterclaim, and cross-petition in which he attempted to assert the lien claims; and McKinley Burnett and a number of other parties filed a petition to be made parties to the action and asked that it be treated as their answer, counterclaim, and cross-petition and attempted to set up their lien claims. Demurrers were interposed to these pleadings which were overruled, and the issues were completed by a reply controverting the allegations thereof.

After hearing evidence, it was adjudged that Hammons & Calebs recover of the Rapp Lumber Company the sum of $2,972.17 with interest from June, 1928, until paid, subject to a credit of $498 with interest from October 21, 1929; and that the other defendants and interpleaders recover the sum of $1,394.02 with interest from June 1, 1927, and the further sum of $175 with interest from June 1, 1927, subject to a credit in the sum of $1,142.27 paid by the receiver on October 21, 1929. It was further recited in the judgment that it appeared that the plaintiff, the Rapp Lumber Company, had paid taxes, costs, and penalties in the sum of $429.75 on lumber involved in the suit, and it was adjudged that it take credit against the money adjudged to be paid out of the proceeds realized from the sale of the lumber for that sum with interest to be pro-rated against the original sum adjudged to Hammons & Calebs and the other creditors of Lewis & McKinney so that each would share proportionately the taxes, costs, and penalties. The attachment was sustained and the sheriff directed to sell the property attached by him or enough to satisfy the unpaid portion of the judgment. It was further adjudged that the cost of the case after return from the Court of Appeals be paid,

one-third by the Rapp Lumber Company, one-third by Hammons & Calebs, and one-third by the other interpleaders. The Rapp Lumber Company is prosecuting this appeal.

Considerable evidence relates to what occurred on the hearing of the motion to dissolve the injunction, but the only order we find in the record is one enjoining the receiver from selling or attempting to sell and dispose of 325,000 feet of lumber claimed by appellant. A number of witnesses for appellee testified that at the hearing, counsel for appellant asked the court to take the lumber out of the hands of the receiver and to permit appellant to dispose of it and account for the proceeds; that counsel agreed that the lumber so taken would be burdened with the liens of appellees; however, there is evidence for appellant to the contrary. There is no order of the court with reference to this matter, but it is alleged, and there is proof conducing to show, that appellant not only took charge of the lumber which bore its stamp or mark but also took charge of other lumber belonging to Lewis & McKinney and collected the proceeds for a part sold and the insurance for that which burned in the railroad yards.

Counsel for appellant raise a number of questions as to the sufficiency of the pleadings filed by appellees and assert that they are not good either as an intervening petition, answer, counterclaim, or cross-petition. Some of these objections seem to be supertechnical, and on the whole we regard the pleadings sufficient to meet the purposes for which they were filed. It is further asserted by counsel for appellant that the allegation in its amended reply that all the claims asserted by appellees had been fully paid and satisfied is undenied and in such circumstances the court was not authorized to enter a judgment for appellees, and this presents a question requiring more serious consideration.

In the amended reply it is specifically alleged that Hammons & Calebs had been paid in full for all the lumber which had been cut, manufactured, or sawed by them prior to the institution of this action, and this stands undenied. The reply denies that at the hearing on the motion to discharge the temporary restraining order, attorneys for appellant agreed that whatever rights appellant had were inferior to the claims of any and all persons who manufactured the timber into lum-

ber or that appellant would take the lumber and dispose of it as the receiver was doing or would account therefor; but alleged that, on the contrary, it was the contention of appellant on that hearing that Hammons & Calebs and all other persons who labored in any way in cutting the logs or in manufacturing or sawing them into lumber had been fully and completely paid for all their labor. So it will be seen that the reply did not specifically allege that the interveners other than Hammons & Calebs had been paid, but only that this contention was made at the hearing.

Counsel for appellees contend that the allegation that Hammons & Calebs' claim had been paid was traversed by the receiver and that a denial by one defendant inures to the benefit of all. But the former opinion concerning the receiver's right to plead for the persons claiming liens disposes of that contention adversely to appellees. Apart from any question concerning the undenied allegation that Hammons & Calebs had been paid in full for all timber cut and sawed by them, a careful review of the record leads to the conclusion that the judgment in their favor does not find sufficient support in evidence.

The evidence concerning the state of accounts between Lewis & McKinney and Hammons & Calebs is in such utter confusion and conflict as to render it impossible to determine with any degree of certainty the balance due the latter firm. This confusion is due partly at least to poor systems of bookkeeping and to the further fact that such records, checks, etc., as had been kept by the parties had been filed or left in court on some former trial and could not be found. Notwithstanding this conflict in evidence, we are not prepared to say that the chancellor's finding respecting the amount due should be disturbed, but an entirely different situation exists when we come to consider the evidence as to the quantity, if any, of the lumber in controversy that had been cut and sawed by Hammons & Calebs. The evidence for appellant is to the effect that Hammons & Calebs had been paid in full up to and including July, and this is admitted by Mr. Calebs. Appellant's evidence further shows that there were very substantial payments made for lumber sawed in August and September. Mr. Hammons stated that they sawed approximately 400,000 feet, and it clearly ap-

pears that the greater portion of this was sawed previous to September. Mr. Hammons stated, when asked what became of the lumber at the mill at the time the attachment issued and after the firm completed the work for the receiver, that it was moved out by the Rapp Lumber Company and Noah Smith, the receiver, and something like 100,000 feet sold by the latter before it was taken out of his hands. The evidence of James Gibbons, who was appointed by the sheriff to make an inventory and appraisement of the timber, introduced the inventory and appraisement in the evidence. It appears that there was an attempt to make separate items of lumber sawed by Hammons & Calebs, but this is not made clear except as to an item of 14,250 feet of oak. R. T. Lewis testified positively that Hammons & Calebs' judgment was for no part of the lumber purchased by the Rapp Lumber Company, and that they had not cut or sawed any of the lumber sold to the Rapp Lumber Company for which they had not received pay. Hammons & Calebs, of course, had no lien or claim on any of the lumber not sawed by them. They have utterly failed to establish how much, if any, of the lumber involved in this controversy was sawed by them, and for which they had not been paid, and in such circumstances the chancellor erred in adjudging them an attachment or other lien against the lumber or proceeds of lumber that went into the hands of appellant. It is apparent that it would not be difficult to show with reasonable certainty how much of the lumber in controversy was sawed by Hammons & Calebs and how much came from other mills, and this should be done.

A different question is presented respecting the claims of the other appellees, since they are not confined to lumber sawed by Hammons & Calebs, but had a lien on any lumber sawed by or for Lewis & McKinney where they labored in cutting, hauling, or sawing same. Mr. Lewis recognized the merit of their claims, since he testified that he was interested in seeing that they were paid and assisted them in preparing their statements and perfecting their liens. The judgment allowing these claims is amply supported by the evidence.

Wherefore the judgment in favor of appellees other than Hammons & Calebs is affirmed, and the judgment in favor of Hammons & Calebs is reversed for proceedings consistent with this opinion.